**GERMANY v. HUDSPETH.**

**No. 4717.**

United States Court of Appeals,
Tenth Circuit.

Jan. 2, 1954.

Rehearing Denied Jan. 14, 1954.

Elisha Scott, John J. Scott and Charles S. Scott, Topeka, Kan., for appellant.

Paul E. Wilson, Asst. Atty. Gen., for the State of Kansas (Harold R. Fatzer, Atty. Gen., of the State of Kansas, and Donald E. Martin, County Atty., Kansas City, Kan., on the brief, for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the District of Kansas in a habeas corpus proceeding, denying appellant, Nathaniel Germany, any relief from the death sentence imposed upon him by a District Judge of Wyandotte County, Kansas, upon the verdict of a jury in a criminal case in which he was found guilty of murder in the first degree.

The facts concerning which there is no dispute may be stated as follows: Appellant was arrested by the city police at his home in Kansas City, Kansas, at about five p. m. on October 30, 1947, in connection with the investigation of the homicide of David W. Gray. He was forthwith taken to police headquarters where he was booked and placed in confinement. Thereafter, commencing about eight thirty, he was interrogated by officers of the Kansas City, Kansas, Police Department. At this time he was not advised of his constitutional rights. This interrogation continued until about eleven or eleven thirty. During the latter part of the interrogation, petitioner's uncle, Educate Germany, was present. Some time between eleven and twelve o'clock p. m. appellant orally admitted the homicide of Gray. In this admission, he stated where he had hidden the gun. Immediately upon such admission, Lt. Joseph Shick of the Kansas Police Department, who had been interrogating him, suggested that they go to the scene of the crime and recover the gun. Appellant voluntarily accompanied Shick and other officers to the place and searched for the gun approximately one and one-half hours but was unable to locate it and it was not found at that time. At this time appellant and his uncle, Educate Germany, were taken back to police headquarters where he was interrogated by the county attorney, commencing about three o'clock a. m. on October 31, 1947. He was advised by the county attorney of his constitutional rights; that he was not required to make a statement and that what he said could be used against him. The questions and answers were taken in shorthand by a stenographer in the county attorney's office and subsequently reduced to writing. A written statement was approved and signed by Germany at about nine a. m. on October 31, 1947, and was used and received in evidence in his criminal trial. The total period of appellant's interrogation did not exceed six to six and one-half hours, which interrogation occurred at three separate and distinct intervals. During the time of such interrogation, appellant was given coffee and ice cream and at intervals was permitted to rest and smoke. No promises of leniency or other inducements were made to Germany prior to making his confession.

On October 31, 1947, the county attorney of Wyandotte County, Kansas, filed a complaint, charging appellant with first degree murder, upon which a warrant was issued and he was arrested on November 21, 1947. Preliminary examination was had and he was bound over for trial in the District Court of Wyandotte County, Kansas. On November 26, 1947, the county attorney filed an information, charging appellant with murder in the first degree. Thereafter, on January 19, 1948, an application was made by petitioner Germany through his own selected counsel that a commission, as provided for by the laws of Kansas, consisting of three medical doctors and specialists in the field of psychiatry be appointed to examine the petitioner and report to the court its findings as to his mental condition, his capacity to comprehend his position and to make his defense in the case. On January 23, 1948, the commission reported in writing to the court its findings, finding that appellant was then insane and was not able to comprehend his position and to make his defense to the charge informed against him. Thereafter, on January 23, 1948, these written findings were approved and the report

was confirmed by the District Court of Wyandotte County, Kansas, and in accordance with Section 62–1531 of the 1935 General Statutes of Kansas he was committed to the hospital for the dangerously insane at Larned, Kansas, for safekeeping and treatment. Petitioner was detained in the Larned State Hospital from about January 23, 1948, until about November 25, 1950, during which time he received appropriate treatment by the staff. Thereafter he was delivered to the custody of the Sheriff of Wyandotte County by the Hospital authorities, who again removed him to the county jail of Wyandotte County, Kansas. On January 3, 1951, petitioner filed a second application requesting the appointment of a second medical commission to re-examine him as to his mental condition, his capacity to comprehend his position and to make his defense to the charge lodged against him in court. This application was granted. Such a commission was appointed and filed its report in court, finding that appellant was sane, was able to comprehend his position and make his defense for the crime of murder. In due course of time and without undue delay, thereafter, he was tried, found guilty and sentenced to death. He appealed to the Supreme Court of Kansas,[1] where his conviction was affirmed. His application for certiorari to the Supreme Court was denied.[2]

Thereafter he instituted this proceeding in the district court, alleging that the judgment was void because of violations of his federally guaranteed constitutional rights. While as found by the trial court in this case the allegations of the petition were broad, in the main it presented two questions, first, that his written confession was obtained by threats and violence and its use was, therefore, in violation of rights guaranteed by the federal constitution and, second, that notwithstanding the first finding by the commission of experts, he

was not insane at the time of his commitment to the State Hospital for Dangerous Insane; hence his detention there from January 23, 1948, to November 11, 1950, denied petitioner a speedy trial, in violation of the Sixth Amendment to the Federal Constitution and subjected him to cruel and unusual punishment. A third contention somewhat involved in the preceding is made that the District Court of Wyandotte County, Kansas, was without jurisdiction to try defendant because of Section 62–1431, General Statutes of 1949, which provides, "If any person under indictment or information for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found or information filed, he shall be entitled to be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term."

When this proceeding was set for trial before the district court, it was established that appellant had not exhausted his state remedies because he had failed to file a habeas corpus proceeding in the Supreme Court of the State of Kansas, raising these questions. The court below stayed the proceeding to give appellant the opportunity to exhaust such additional remedy by filing a state habeas corpus action. Such an action was filed directly in the Supreme Court of Kansas and on February 5, 1953, the application for the writ was denied.[3]

The opinion of the Supreme Court of Kansas in the habeas corpus case is quite brief and general in its statements and does not clearly reflect the issues presented or considered by the court. But no doubt the issues that were present here were likewise involved in that case because it was to permit appellant

1. See State v. Germany, 173 Kan. 214, 245 P.2d 981.

2. See 344 U.S. 845, 73 S.Ct. 62.

3. See, 174 Kan. 1, 252 P.2d 858.

to exhaust his remedies in the state court that this case was stayed.

The trial court found that at the inception of his questioning by police appellant was not informed of his constitutional rights but at no time did he request counsel and at no time was he precluded from having an attorney; that subsequent to the written confession his person was inspected by Negro citizens of Wyandotte County at their request and that such inspection revealed no evidence of violence and that appellant stated to the persons making such inspection that he had not been beaten or otherwise abused by the officers who had interrogated him; that at no time prior to making his oral confession or prior to the execution of his signed confession was appellant struck or threatened with bodily harm or otherwise abused by officers interrogating him; that no promises of leniency or other inducements were made to him prior to making his confession. The court specifically found that the confession was freely and voluntarily given and not induced by threats, force or promises. The trial court further found that appellant's detention at the Larned State Hospital from January 23, 1948, to November 25, 1950, was for the benefit of petitioner; that during that time he was under the exclusive jurisdiction of the hospital authorities; that during said period of time the county attorney of Wyandotte County, Kansas, was advised of Germany's condition and at the earliest feasible date Germany was returned to the District Court of Wyandotte County, Kansas, for trial; that the Kansas statutes in question were not unconstitutional and that their application to facts in the case in nowise violated the Constitution of the United States; that the Fourth, Fifth and Sixth Amendments to the Constitution of the United States were not limitations upon the prosecution of this petitioner in the District Court of Wyandotte County,

Kansas, for violations of the laws of Kansas; that there was no violation of the due process clause of the Fourteenth Amendment of the Constitution; that the findings of the sanity commission of January 23, 1948, that appellant was not sane, that he was insane and incompetent of making a defense were conclusive and binding and could not be collaterally attacked in .this proceeding. The court also found that appellant was not denied his right to a speedy trial and that appellant was not subjected to cruel or unusual punishment. The determination of this appeal depends upon whether these findings are supported by the record.

While six specifications of error are set out in the brief, in the argument they are grouped into three classifications, namely, (1) appellant was denied the right to a speedy trial, (2) he was subjected to cruel and inhuman punishment, and (3) his confession was involuntary. It is urged that these matters complained of violate the rights guaranteed by the Fifth, Sixth and Eighth Amendments to the United States Constitution.

■■ It is well established that the Fifth, Sixth and Eighth Amendments are limitations upon procedure in federal courts and do not govern trials in state courts.[4] It does not follow, however, that because thereof criminal proceedings in state courts are not subject to scrutiny and review in proper proceedings in federal courts and may be of such a nature that they are in contravention of due process guaranteed by the Fourteenth Amendment. In Buchalter v. New York, 319 U.S. 427, 63 S.Ct. 1129, 1130, 87 L.Ed. 1492, the court said:

"The due process clause of the Fourteenth Amendment requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice which lie at the

4. Bolln v. Nebraska, 176 U.S. 83, 20 S. Ct. 287, 44 L.Ed. 382; Spies v. Illinois, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; Jack v. Kansas, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234; McElvaine v. Brush, 142 U.S. 155, 12 S.Ct. 156, 35 L.Ed. 971.

base of our civil and political institutions, which not infrequently are designated as the 'law of the land.' Where this requirement has been disregarded in a criminal trial in a state court this court has not hesitated to exercise its jurisdiction to enforce the constitutional guarantee." [5]

We, therefore, do have power and it is our duty to inquire whether the state proceedings violated these basic concepts of liberty and justice.

It is contended that appellant was sane at all times and that his incarceration in the State Asylum for approximately two years and nine months not only constituted cruel and inhuman punishment but also violated the fundamental basic concept of a speedy trial inherent in American jurisprudence and, therefore, was a violation of due process.

Appellant relies for support of his contention that he was sane at all times upon testimony of individual members of the medical staff at the Larned Hospital to the effect that in their opinion he never was insane. But we have an adjudication by the trial court based upon the findings and recommendations of a commission convened under statutory provisions for the purpose of determining his mental capacity and his ability to comprehend the effects of a criminal trial and to defend himself therein.

■ After that finding and adjudication, the court was without power to proceed with the trial. It could only, as it did, commit appellant to the hospital for treatment and care and could proceed with the trial again only when it was established that he was restored to sanity and, therefore, able to defend himself. Individual statements or beliefs by different members of the medical staff that appellant was sane could not have the force and effect of setting aside a judicial determination of mental

incapacity. Appellant's mental capacity could thereafter be established only by an orderly proceeding according to law. Such a proceeding was had about June 6, 1950. A staff meeting was held on that day in which appellant's mental capacity was the subject of inquiry. His case was reviewed and it was determined that he was not psychotic and that "he will, therefore, be returned to court to stand trial." It was only after that determination that the district court had power to proceed with the trial. Shortly thereafter he was returned and the trial was had without undue delay. While not decisive, we might say in passing that when he was returned for trial he demanded the appointment of a second commission to inquire into his sanity and went to trial only when this commission found him sane.

Appellant's detention in the Larned Hospital was in no sense punishment for crime. He was there to receive care and treatment for physical ailments as well as for a disturbed mental condition. Therefore, in no event, can his confinement there be considered as punishment, let alone cruel and inhuman punishment.

■ Neither can we agree with appellant's third contention that his confession was involuntary. The evidence is overwhelming in support of the trial court's finding that he was not threatened, physically abused or worn down by long and uninterrupted questioning to the point where his resistance was destroyed or overcome. The record is clear that the period of time prior to his oral admission of the crime involved at most three and one-half hours. Nor is there anything in the record that the inquisition was conducted in a manner frowned upon by the Supreme Court in its decisions. We cannot escape the conclusion that his oral admission was made freely and voluntarily and, while he was not advised of his constitutional rights during such questioning, when

5. See also Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270; DeJonge v. Oregon, 299 U.S. 353, 57 S. Ct. 255, 81 L.Ed. 278; Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

the county attorney interviewed him for the purpose of preparing a written statement for his signature, he was fully advised as to his constitutional rights; that he need not answer and that anything that he said might be used against him. With this information, he consented to answer questions and, when his statement was reduced to writing and after being fully informed as to its contents, he signed it.

Because of the gravity of the sentence imposed, we have given this case extra diligence and thorough consideration. We have reviewed the voluminous record and the many exhibits. The conclusion is inescapable that appellant was not denied due process in his state trial, as that term is defined in Buchalter v. New York, supra, and related cases.

The decision appealed from is, therefore, affirmed.