LEO SEVIGNY *vs.* HAROLD V. LANGLOIS, *Warden.*

APRIL 6, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition for a writ of habeas corpus. We ordered the writ to issue, returnable on February 2, 1962. On that date the cause was argued before us by the public defender on behalf of the petitioner and by an assistant attorney general on behalf of the respondent.

It appears from the petition and from the record of certain proceedings in the superior court that petitioner on May 31, 1957 waived action by the grand jury on a charge of statutory burning and at that time was given a deferred sentence. On August 2, 1958 he was arraigned before a superior court justice as a deferred sentence violator, having been charged with setting fire to the Central high school in Providence. He was held without bail on the charge of having violated the terms of his deferred sentence, pending a presentence report and psychiatric examination.

It further appears that on August 18, 1958 Dr. Herbert H. Myers, clinical psychiatrist for the Department of Social Welfare, made a report wherein as a result of his examination he advised that petitioner be committed to the state hospital for mental diseases. In response to an inquiry apparently made by the attorney general, Dr. Myers renewed his recommendation and petitioner was committed on November 15, 1958 and remained at the state hospital for mental diseases for eleven months, after which he was returned to the adult correctional institutions. Meanwhile, petitioner had been indicted for arson in connection with the burning of Central high school. This indictment, No. 29,022, was returned on October 20, 1958 while petitioner was being held without bail. Presumably, in the existing circumstances, petitioner was held without bail on said in-

dictment although no such allegation appears in the record.

The record discloses that Dr. Myers made a total of seven psychiatric examinations, namely, August 18, 1958, November 19, 1958, April 18, 1960, June 7, 1960, July 12, 1960, September 29, 1960 and January 26, 1962. The purpose of these examinations was to determine whether petitioner was mentally competent to stand trial as well as to ascertain if he could be sentenced for violation of the deferred sentence. The substance of all such reports, with the exception of those dated September 29, 1960 and January 26, 1962, was to the effect that petitioner could not distinguish between right and wrong. The last two reports mentioned indicated that he had improved to the extent that he could distinguish between right and wrong, and was competent to stand trial. The September 29, 1960 report, however, appears to have included the phrase "prognosis guarded," leaving some doubt as to petitioner's mental condition.

On October 17, 1960 a hearing was had in the superior court on a motion made by the public defender to permit petitioner to demur to indictment No. 29,022. The transcript thereof was made a part of the record in the instant proceedings by agreement of the parties. It appears therefrom that except for the motion for permission to demur as aforesaid no other action had previously been taken by petitioner or in his behalf in connection with the indictment. The superior court justice granted the motion, but whether the demurrer was subsequently heard on its merits does not appear.

At the October 17, 1960 hearing Dr. Myers was questioned about the contents of his several reports. The court expressed dissatisfaction with his diagnosis of petitioner and ordered a further examination, suggesting that the attorney general and public defender confer on the selection of an independent psychiatrist.

We are informed by the assistant attorney general, without objection from the public defender, that Dr. Mendel E. Cohen of Massachusetts General Hospital was selected; that on December 2, 1960 he examined petitioner by order of the superior court justice; and that in his report to the superior court on March 15, 1961 he stated, "I feel that he does not seem competent to stand trial—nor is he competent to lead a life outside of an institution."

Apparently there were no further developments until December 26, 1961 when petitioner applied to the superior court for a writ of habeas corpus. He informs us that the application was returned two days later because of his failure to furnish an entry fee of $5. It is reasonable to assume that Dr. Myers' report of January 26, 1962 had been requested by the attorney general as a result of petitioner's application to the superior court. We are advised, without objection from the public defender, that this report stated, "Subject is not suffering from a mental illness at the present time. Because of this I feel that subject is able to stand trial at this time and will be able to follow the procedures during the trial."

The instant petition was filed January 11, 1962, pursuant to the provisions of G. L. 1956, §10-9-22. The petitioner recites that he has been confined for a period of forty months, during which time he alleges the attorney general has made no effort to bring him to trial on the pending indictment. He bases his right to be released on the provisions of G. L. 1956, §12-13-7, which read as follows:

> "Every person who shall be indicted for any of the crimes named in §12-13-5, and shall be imprisoned under the indictment, shall be tried or bailed within six (6) months next after the time at which he shall plead to such indictment, if he demand a trial, unless it shall appear to the court that some material witness in behalf of the state has been enticed away or is prevented from attending court by some unavoidable accident."

The respondent argues that in the light of all the efforts made by the state to determine petitioner's mental competence to stand trial, and the psychiatric reports resulting therefrom, it is clear that petitioner's allegation of inaction by the attorney general is unfounded. We are of the opinion, however, that the examinations to determine petitioner's mental capacity made after his return to the adult correctional institutions do not have the effect of tolling the statutory provisions on which petitioner relies. It may well be that during the time petitioner was confined to the state hospital for mental diseases on proper commitment he was not entitled to the provisions of §12-13-7, *supra*. Upon his discharge therefrom, however, it must be presumed that his condition had so improved as to entitle him to his release after six months, unless previously admitted to bail or brought to trial at his request. *In re Deslovers,* 35 R. I. 248.

It is clear from the record before us, however, that neither the petitioner nor anyone acting in his behalf has ever made such a request unless it may be assumed that the application to the superior court on December 26, 1961 may be so considered. If out of an abundance of caution for the preservation of the petitioner's rights we make such assumption, it nevertheless appears that the time period has not yet expired and this petition is therefore premature.

The petitioner's application for a writ of habeas corpus is denied and dismissed and the writ heretofore issued is quashed.

*Leo P. McGowan,* Public Defender, for petitioner.

*J. Joseph Nugent,* Attorney General; *William J. Counihan, Jr.,* Assistant Attorney General, for respondent.