**The STATE of Oklahoma, Appellant,**

**v.**

**Clarence J. DURHAM, Appellee.**

**No. O-75-459.**

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1976.

S. M. Fallis, Jr., Dist. Atty., Marvin E. Spears, Asst. Dist. Atty., Tulsa County, for appellant.

Patrick A. Williams, Tulsa, for appellee.

## OPINION

BLISS, Judge:

The appellee, Clarence J. Durham, hereinafter referred to as defendant, was charged by preliminary information dated December 27, 1965, in the Common Pleas Court in and for Tulsa County, State of Oklahoma, Case No. 144263, for the crime of Murder, in violation of 21 O.S.1961, § 701. On January 25, 1966, the defendant by his then attorney of record made application to the District Court in and for said county requesting that defendant be committed to the Eastern State Hospital of Oklahoma at Vinita, a State hospital within the Department of Mental Health of the State of Oklahoma, for mental observation for a period not to exceed ninety (90) days as contemplated by 22 O.S.Supp.1965, §§ 1171 to 1174. Upon hearing, the application was granted and order entered accordingly. Within the period, the superintendent of the hospital requested a thirty (30) day extension for such observation, and the same was granted by order. During

the thirty day extension and on May 19, 1966, the superintendent directed a letter to the court advising that the defendant was mentally incompetent at the time, should be returned to the custody of the court and "committed to a mental hospital for psychiatric care and treatment."

On May 27, 1966, a court hearing was held, attended by the State's attorney and the defendant and his attorney of record, at the conclusion of which the defendant was ordered "transported to the Eastern State Hospital at Vinita, Oklahoma, for treatment in compliance with Title 22 Oklahoma Statutes Annot. Secs. 1171–1174, until the defendant become sane, and to await further order of court." The record clearly indicates the defendant acquiesced in this order and made no request for jury trial as permitted by Section 1174.

On September 18, 1972, the court case consultant of the Eastern State Hospital directed a letter to the court, declaring the defendant mentally competent and requesting that defendant be removed from the hospital at the earliest possible date. On September 20, 1972, the letter was filed and the defendant was present in court for pre-preliminary examination arraignment.

At the preliminary examination held May 24, 1973, held in the District Court of Tulsa County under a new case number, CRF–73–1203, said Common Pleas Court having been merged into the District Court by reason of court reorganization effected by amendment to the Constitution of the State of Oklahoma, on the preliminary information, defendant was bound over for trial for the crime of Murder.

Transcript of the evidence at the preliminary examination or hearing reflects substantially as follows: Jewel Mae Baskin, called as a witness for the State, testified that on Christmas day, about noon, December 25, 1965, she had driven to the home of a friend in the City of Tulsa. As she parked her car, she noticed another being parked near the driveway. After she had entered the friend's home, her attention was attracted to the defendant, whom the witness did not know, standing out front holding a lady with one hand and a firearm in the other hand and apparently trying to force the lady to go with him. Fearing for the safety of her own children left in her automobile, the witness went to them and told them to go into the friend's house, which they did. She talked with the defendant, who told her that the lady he was holding was his wife and he wanted her to go ·with him, but she was refusing, saying, "No, he wants to hurt me. . . . You are going to kill me. . . . You might as well do it here." Witness Baskin's attempt to persuade the defendant against any violence failed and he shot his victim in the head with the firearm. As she lay on the ground, defendant went to his car, returned with a shotgun and blew the top of her head off. He then returned to his car and attempted suicide by shooting himself with a pistol. The police and ambulance soon arrived.

Following stipulation as to the cause of death of the victim, Jewel Bernice Durham, the State rested. Defendant offered no evidence but demurrer to the State's, asserting it did not prove the crime charged, Murder, that it did not show the defendant legally competent to know his acts and conduct at the time of the homicide and that it showed the defendant had been incarcerated in the Eastern State Hospital for over six (6) years prior to the preliminary hearing, not knowing right from wrong. The magistrate overruled the demurrer and held the defendant for trial.

Trial information was filed July 2, 1973. Defendant's Motion to Dismiss for want of jurisdiction was overruled and on October 10, 1973, defendant filed a lengthy Motion to Quash the information in which were embodied, overall, the alleged insufficiency of the evidence at the preliminary examination, allegedly reflecting lack of jurisdiction, failure to show defendant sane at the time of the alleged crime, denial of speedy trial and denial of due process. On October 23, 1973, the said Motion to Quash was heard and overruled and defendant was ar-

raigned, to which defendant stood mute and a plea of not guilty was entered by the court and the case was assigned for trial on December, 1973, jury docket unless, as suggested by the court, writ of prohibition was sought in the Court of Criminal Appeals, which the defendant did not pursue. Thereafter, the case was continued for trial six (6) different times at the request of the defendant and two (2) times at the request of both the defendant and the State of Oklahoma.

Ultimately, the case came on for trial on October 3, 1974. The State announced ready. The defense counsel responded, "We have heretofore filed with Your Honor a Motion to Quash the Information," and proceeded with extended observations in reference thereto as well as other positions taken by the defendant. The court, considering previous and renewed motions of the defendant, thereupon announced its ruling as follows:

"The Court will sustain the Motion to Quash.

"It is not my intention, and there has been no jury sworn in this case, to dismiss this case in such a manner that it cannot be prosecuted by the State. So, therefore, I will sustain a Motion to Quash and I believe under our statute, the sustaining of a Motion to Quash does not preclude prosecution should the Court of Criminal Appeals disagree with my opinion. Therefore, the Motion to Quash being sustained, I will in ten days issue an order of dismissal in the case if not prohibited from doing so."

The State of Oklahoma sought writ of prohibition in the Court of Criminal Appeals in Case No. P–74–778, but the Court declined to assume original jurisdiction on March 21, 1975.

On March 24, 1975, the trial court entered its final order of dismissal of the case and discharging the defendant, referring therein to its said order of October 3, 1974. It is from this final order that this appeal has been taken and lodged herein and is basically on appeal by the State of Oklahoma from a judgment for the defendant on quashing the information, such appeal being authorized by 22 O.S.1971, § 1053.

The Court shall now proceed to consider the ingredients of said Motion to Quash.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court of the United States clearly sets forth the criteria which must be considered in the determination of a speedy trial issue:

"A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

\*　　\*　　\*　　\*　　\*　　\*

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. . . .

\*　　\*　　\*　　\*　　\*　　\*

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In some, these factors have no talismanic

qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."

The trial court in dismissing the action against the defendant stated as follows: ". . . The Court finds that the manner in which said Defendant was ordered confined to the Eastern State Hospital, Vinita, Oklahoma, was in violation of Defendant's rights to due process of law and equal protection of the law in that he was denied a speedy trial; that said delay in bringing this matter to trial has caused irreparable detriment to said Defendant and under the rulings of the Supreme Court of the United States, in the cases of *Jackson vs. Indiana,* 406 U. S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435; *Barker vs. Wingo,* [407 U.S. 514], 92 S. Ct. 2182 [33 L.Ed.2d 101]; *Strunk vs. U. S.* [412 U.S. 434], 93 S.Ct. 2260 [37 L.Ed.2d 56], the Court finds that said case against this Defendant should be dismissed, the Defendant discharged and his bond exonerated with exception to such ruling given to the State of Oklahoma."

The State, in response to the grounds on which the said dismissal was predicated, contends for two reasons that the defendant's right to a speedy trial was not violated because: First of all, the delay was at the request and for the benefit of the defendant, and secondly there were not sufficient facts to support a conclusion that the defendant was actually prejudiced by the said delay.

The argument to which the trial court adhered in sustaining the defendant's motion to dismiss was predicated on the defendant's loss of his defense due to the death of key witnesses during the time in which the defendant was hospitalized. The defendant maintained that the death of Dr. B. F. Peterson, Administrator of Eastern State Hospital, who originally admitted and interviewed the defendant was most prejudicial to the defendant since Dr. Peterson was the only person who could testify on a first hand basis as to the probable mental condition of the defendant at the time of the fatal shooting of his wife. Also, the defendant urges that the death of his father was prejudicial to him since his father could testify as to the condition and reactions of the defendant just prior to the alleged act.

In applying the particular facts and circumstances of this case to the criteria which the Supreme Court of the United States has established in the case of *Barker,* supra, the Court has come to the determination that the judgment of the trial court was error, and must be reversed.

First of all, the length of delay in the instant case was approximately six years and nine months. There is no doubt that a delay of such length is substantial enough to constitute the loss of a speedy trial if analysis of the other factors concludes that such a delay was unwarranted. Secondly, the reason for the delay was the hospitalization of the defendant pending his recovery. Thirdly, the defendant during his hospitalization never asserted his rights to a speedy trial, however, this failure cannot be heavily construed against the defendant in these particular circumstances. Finally, the loss of a defense to the crime with which the defendant is charged due to the death of those persons who are able to present this defense, results in substantial prejudice and is, as the Supreme Court suggested in *Barker,* supra, a factor to be construed most heavily in favor of the defendant. However, it must be mentioned that this Court entertains reasonable doubt as to the claim of prejudice. It appears from the record that extensive progress notes describing the condition of the defendant are available for interpretation. In addition to the existence of the progress notes it appears from the record that as early as May 19, 1966, another staff member, H. B. J. Dietsche, dictated a letter

concerning the condition of the defendant. It appears therefore that Dr. B. F. Peterson was only one member of a staff who was responsible for the defendant's case. Since the defendant has failed to present this Court with an appellee's brief, we are not aware of the arguments presented on his behalf pertaining to the prejudice which has allegedly resulted from the death of defendant's father.

Assuming for the time being that the prejudice is as was alleged by the defendant, this Court is still of the opinion that the defendant was not deprived of his right to a speedy trial. We reach this conclusion by analyzing the facts of his case in relation to the second criteria set forth by the Supreme Court of the United States in *Barker,* supra, the reason for the delay. In relation to this element which must necessarily be considered in determining an alleged denial of a defendant's right to a speedy trial, the Supreme Court in *Barker* said:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

First of all it must be said that in the instant case the State is in no way responsible for the delay in bringing the defendant to trial. The State maintained constant communication with the hospital from the time the defendant was committed until the time he was released and immediately upon receiving notice from the hospital that the defendant was deemed competent to stand

trial the State made arrangements to have the defendant brought before the court for proceedings in relation to the pending criminal charges. By concluding that the fault of the delay does not rest upon the State, we do not intend to say that the fault therefore rests upon the defendant. As a matter of fact the defendant's mental illness is the sole cause for the delay. The only question then, which necessarily remains, is: Whether or not the delay of the trial for the purpose of allowing the defendant to regain his ability to assist his counsel in preparing a defense is an "appropriate delay." The answer is most assuredly yes. The only alternative would be to force a criminal defendant to go to trial when he is unable to assist his counsel in preparing a defense, or to allow him to effectively evade criminal prosecution by virtue of present insanity which may persist for some unreasonable length of time. In light of due process of law, neither of the above results are desirable nor are they commanded. The delay of a trial due to the mental incompetence of the defendant is both a necessary and requisite part of the criminal process. When the very delay on which the issue of speedy trial is predicated is a delay which actually protects and is for the benefit of the defendant, then it cannot be said that this delay is within the contemplation of the speedy trial amendment which was written for the purpose of protecting the citizen against arbitrary state action. Based on the above reasons, this Court comes to the same conclusion as did the courts in the following cases when they held that a defendant's rights to a speedy trial had not been violated by a delay which was the direct result of the defendant's inability to assist in his own defense. *State v. Brown,* Mo., 502 S. W.2d 295 (1973); *Genereux v. Pelosi,* 96 R.I. 452, 192 A.2d 630 (1963); *People v. Browry,* 8 Ill.App.3d 599, 290 N.E.2d 650 (1972).

The contention vigorously argued by the defendant in the court below, to which the trial court adhered, was based upon *Jack-*

*son v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In *Jackson* the Supreme Court of the United States held that it was a violation of due process of law for a criminal defendant to be indefinitely hospitalized before his trial because of present inability to assist his counsel in a defense. The circumstances of this case involved a defendant who was mentally retarded and who, most likely, could never have reached a mental level which would be sufficient to subject him to a criminal prosecution. In such a case the Court said that the defendant should have been removed from the jurisdiction of the criminal court and civilly committed. As can be seen, the facts of the instant case do not lend themselves to the same result. It was not contended below that the defendant could never have regained his ability to assist his counsel, nor was it contended that the defendant should have been civilly committed. The defendant's position was that he should be entirely released and set free because of the delay which allegedly deprived him of a speedy trial.

Accordingly, in light of the foregoing, this Court holds that the trial court, by sustaining the defendant's Motion to Quash the Information and entering its order of dismissal of the case, No. CRF–73–1203, discharging the defendant and exonerating his bond by said order dated March 24, 1975, was in error and should be, and is hereby, reversed and the case is remanded to the District Court, Tulsa County, to vacate said order and judgment and to proceed with the trial of said case as though the order sustaining the Motion to Quash the Information and dismissal of the case and discharge of defendant had never been made and entered. The trial is to proceed upon the information now on file in said case and the plea of not·guilty thereto as distinguished from requiring the State to file a new information and commence its prosecution anew.

█ This appeal is one under subparagraph 1 of 22 O.S.1971, § 1053, upon judgment for the defendant on quashing or setting aside an information as opposed to one under subparagraph 3, upon a question reserved by the State, and this Court desires to set at rest once and for all, whether the said case may proceed to trial or must the defendant be forever discharged as held by this Court many times in construing subparagraph 3 dealing with a question reserved by the State.

In the early case of *State v. Pollock,* 5 Okl.Cr. 26, 113 P. 207 (1911), this Court held in an opinion written by Judge Furman as follows:

" . . . Section 6947, Snyder's Comp. Laws Okl.1909 [Now 22 O.S.1971, § 1053] is as follows: 'Appeals to the Criminal Court of Appeals may be taken by the state in the following cases and no other: (1) Upon judgment for the defendant on quashing or setting aside an indictment or information. (2) Upon an order of the court arresting the judgment. (3) Upon a question reserved by the state.' Section 6950, Snyder's Comp.Laws Okla.1909 [Now 22 O.S. 1971, § 1056], is as follows: 'An appeal taken by the state in no case stays or affects the operation of the judgment in favor of the defendant, until the judgment is reversed.' From these sections it is seen that, when the appeal is from a judgment quashing or setting aside an indictment or information or from an order of the court arresting a judgment, an appeal taken by the state will not stay or affect the operation of such judgment or order in favor of the defendant until the judgment or order is reversed. An appeal upon a question reserved by the state does not bring up any part of the trial or proceedings of the case, except the question reserved and the judgment of acquittal, and, if such question reserved is decided in favor of the state, it simply settles that question of law, and does not affect the verdict of acquittal. As this is an appeal from a judgment setting aside an indictment, the judgment of the lower court is reversed and the case is remanded, with directions to the

county court of McClain county *to vacate the judgment setting aside the indictment and reinstate this cause* upon its docket, and to proceed as though the order setting aside the indictment had never been made." (Emphasis added)

See also, *State v. Barnett,* 60 Okl.Cr. 355, 69 P.2d 77 (1936) and *State v. Gray,* 71 Okl.Cr. 309, 111 P.2d 514 (1941).

Although the question with which we are now concerned was not actually before this Court in *State v. Dennis,* 28 Okl.Cr. 321, 230 P. 935 (1924), a conflicting view was expressed and the loose language therein used has caused considerable confusion and erroneous holdings in later cases. *State v. Dennis,* supra, and *State v. Waldrep,* 80 Okl.Cr. 230, 158 P.2d 368 (1945), *State v. Edmondson,* Okl.Cr., 536 P.2d 386 (1975), and *State v. Hanna,* Okl.Cr., 540 P.2d 1190 (1975), and any other cases of this Court in which inconsistent views are stated, are hereby expressly overruled insofar as they conflict with the views herein stated in reference to subparagraph 1 of 22 O.S. 1971, § 1053.

██ However, we specifically call to the attention of the trial courts of the State, as did Judge Jones in his dissent in *State v. Waldrep,* supra, the procedure followed by the trial court in *State v. Barnett,* supra, and order and direct that it be used by the trial courts in the future in sustaining a motion to quash or setting aside an indictment or information and making a record for appeal therefrom by the State under subparagraph 1 of 22 O.S.1971, § 1053. The procedure, record and order of the court should be substantially as follows:

It is, therefore, by the Court considered, ordered and adjudged:

1. That the information (or indictment) filed herein be and the same is hereby quashed and set aside for the reasons set forth in the findings of the Court herein, to which action and ruling of the Court, the State of Oklahoma, by the District Attorney, excepts, and exceptions are allowed; thereupon the District Attorney gives notice in open court of his intention to appeal to the Court of Criminal Appeals of the State of Oklahoma, and requests that the Clerk be directed to note on the minutes said notice of appeal, which is, accordingly, done.

2. It is further ordered and adjudged by the Court that the sureties on the bail bond of the defendant be, and they are hereby exonerated and discharged from further liability by reason of their undertaking herein, but that the defendant be not discharged pending the appeal and determination of this case by the Court of Criminal Appeals of the State of Oklahoma, but that he be enlarged and placed at liberty upon his own recognizance during the pendency of said appeal.

3. It is the further order and judgment of the court that in the event the appeal herein allowed is not perfected within the time fixed by law and the order of this Court, or if this order shall be affirmed, then and in that event, the defendant shall stand discharged under the information (or indictment) herein.

Witness the undersigned Judge of the District Court in and for said county and State of Oklahoma.

Such procedure, record and order fully comply with the applicable statutes and the views expressed herein.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.

BRETT, Presiding Judge (concurring in results):

I concur in the results of this decision as it pertains to a "Motion to Quash the Information" as a pre-trial motion. In the instant case the defendant has not been placed in jeopardy; and, therefore, under the facts stated he should stand trial for the offense committed.