DECISION
On June 6, 1997 the respondent, Joseph Shehan, an inmate at the Adult Correctional Institution (ACI) was transferred from the facility to the Eleanor Slater Hospital Forensic Unit (Forensic Unit) pursuant to § R.I.G.L. 40.1-5.3-6 and Superior Court Administrative Order 86-1. Neither the Department of Mental Health, Retardation and Hospitals (MHRH) nor Joseph Shehan objected to the transfer. The basis for said transfer was a report of James Greer, M.D., psychiatrist for the Department of Corrections (DOC) who opined that Shehan met the criteria for transfer in that he was mentally ill and required "specialized mental health care and psychiatric inpatient services which cannot be provided in a correctional facility . . ."
Apparently, Shehan was provided with the recommended specialized care and services at the Forensic Unit and on July 21, 1997 a petition was filed by A. Kathryn Power, Director of MHRH, under the auspices of § 40.1-5.3-9 of the RIGL to return Mr. Shehan to the ACI. In support of the petition was a report by Richard Wagner, M.D., Shehan's treating psychiatrist at the Forensic Unit. Dr. Wagner's report, in essence stated that Joseph Shehan had recovered his mental health, and inpatient psychiatric treatment was no longer required.
In response to Ms. Power's petition, Shehan filed an objection. As a result, another Justice of this Court ordered an evaluation of his condition by an ACI psychiatrist for the purpose of determining the validity of Dr. Wagner's conclusions. Mr. Shehan subsequently was again examined by Dr. Greer, who determined that Shehan was "significantly improved" and ". . . is certainly stable enough to be managed at the ACI with continued mental health treatment through the ACI's health services." It should be noted that the ACI does not object to Shehan's return.
Persistent in his objections, Joseph Shehan claims that §40.1-5.3-9 entitles him to a hearing before a return to the ACI can be legally accomplished. Shehan bolstered his position with a report to the Court from Ronald Neeper, M.D., a private neuropsychiatrist. MHRH objected to Dr. Neeper's report and Shehan's request for a hearing, asserting that RIGL § 40.1-5.3-9
does not permit an inmate/patient an objection to his return to the ACI or afford him a hearing on the issue.
In paraphrase the petitioner's argument is as follows:
 R.I.G.L. § 40.1-5.3-9 is clear and unambiguous and its language does not give an inmate the right to object to transfer to his original place of confinement, nor does it permit a hearing in the matter.
The petitioner's memorandum reviews certain other portions of the statute, to wit: §§ 40.1-5.3-3 (g), 40.1-5.3-3 (i), 40.1-5.3-3
(k), 40.1-5.3-3 (m), 40.1-5.3-4 (d), 40.1-5.3-4 (m) and40.1-5.3-7 (a) and states quite correctly that each one of those provisions explicitly provide a criminal defendant with a hearing at various stages to determine particular issues, e.g., competency, evaluation of reports, evidence, etc. The petitioner reasons that since the legislature, in definitive terms, gave inmates the right to a hearing pursuant to the aforementioned sections and since § 40.1-5.3-9 lacks the same definiteness the legislature did not intend to provide an inmate/patient with a hearing.
Statutory provision R.I.G.L. § 40.1-5.3-9 "Return to Confinement" reads:
 "When any person transferred pursuant to Section 40.1-5.3-7 has sufficiently recovered his or her mental health, he or she may, upon petition of the Director and by order of a Justice of the Superior Court in his or her discretion, be transferred to the place of his or her original confinement, to serve out the remainder of his or her term of sentence."
The respondent's argument challenges the petitioner's assertions that the right to a hearing is not clearly expressed in that relevant provision. The respondent puts forth the proposition that § 40.1-5.3-9 is "rife" with explicit language since it explicitly conditions a return to prison upon an "order" of a Superior Court judge. It explicitly establishes "sufficiently recovered" as the standard of review which the judge must apply. The respondent presented other contentions which are also of interest, but in this Court's judgment, are not central or dispositive of the instant issue.
The Court has examined the authorities cited by the parties and their persuasive effect, if any, on the issues presented in light of the language of § 40.1-5.3-9. The petitioner maintains the Rhode Island statutory scheme for transfer of prisoners from psychiatric facilities to prison is similar to statutes of other states and does not implicate any constitutional rights. An examination of the jurisdictions relied upon leave this Court unconvinced that any similarity exists between our statute and those respectively cited by the petitioner, since none, including that enacted by our federal sovereign, have a provision corresponding to § 40.1-5.3-9 of our General Laws. The petitioner adduces the decision in Jackson v. Fair, 846 F.2d 811 (CA. 1 1988) in her effort to convince the Court that the hearing demanded by the respondent is not justified. That case bears some similarity to the one at bar to the extent that it dealt with an inmate who was transferred from a mental hospital to prison. The inmate, Anthony Jackson, filed a civil rights action, seeking a preliminary injunction to order his return to the hospital. The United States District Court for the District of Massachusetts denied the motion for injunctive relief. The First Circuit Court of Appeals affirmed the decision of the lower Court. Jackson's complaint was that his release from the hospital to the prison was illegal and violative of Massachusetts General Laws, Chapter 123 § a(b) since he was not afforded a hearing prior to transfer. A reading of Chapter 123 § a(b) et seq. clearly demonstrates that it bears no similarity or resemblance to our § 40.1-5.3-9. Simply stated, there is no "Return to Confinement" provision in the Massachusetts General Laws. Under Massachusetts law a prisoner can be committed to a psychiatric facility for a period not exceeding one year, M.G.L. Ch. 123 §§ 8, 18 (a). Once the period of commitment expires, the prisoner is automatically released from the hospital unless state officials obtain a new commitment order. The Massachusetts statute is devoid of any language which would lead anyone to the conclusion that an inmate in Jackson's circumstance would be entitled to a hearing prior to his return to confinement. Chief Judge Campbell of the First Circuit Court of Appeals put it succinctly:
 ". . . Second, we would be more disposed to adopt Jackson's unlikely reading of the statute had some procedures to give patients a "right" to stay in psychiatric institutions."[1]
An analysis of § 40.1-5.3-9 leads this Court to conclude that it does, in fact, bestow a patient/inmate with the "right" to remain at the Forensic Unit. The language of the statute is not ostensible in tenor; on the contrary, it is clear and without obfuscation. Before a prisoner/patient can be returned to the prison, the Director of MHRH must file a petition with a Justice of the Superior Court. Black's Law Dictionary defines the word "petition", in part, as follows:
 A formal written application to the Court requesting judicial action on a certain matter. A recital of facts which give rise to a cause of action. Matthews v. Simmons, Tex. Civ. App., 589 S.W.2d. 156, 159. Black's Law Dictionary, 6th ed., pp. 1145, 1146.
Thus, before the inmate/patient can be moved from the hospital to his original place of confinement there is a threshold necessity placed upon the Director of MHRH to request such action by the Court. In consequence, once the petition is filed a cause of action is created in which the sole issue is whether or not the inmate/patient is "sufficiently recovered" to be returned to the prison.
Additionally, Section 40.1-5.3-13 entitled General Rights
states in part:
 (a) Every person committed for care and treatment under the provisions of this chapter shall retain certain constitutional and civil rights. The exercise of these rights may be limited only for good cause and any limitation must be promptly entered into the person's record. These rights include but are not limited, to the following: . . .
 (4) To seek independent examinations and opinions from a psychiatrist or mental health professional of his or her choice; . . .
 (6) To have access to a mental health advocate upon request; . . .
In refinement, § 40.1-5.3-13 the terminology of this section of the statute tells us not only did the legislature clearly assure the inmate/patient the retention of his constitutional and civil rights, but granted him or her the right to seek independent examination and/or opinions from professionals and an advocate to assist that person in his or her legal plight. "In enacting statutes, the legislature is presumed to have intended that every word, sentence or provision has some useful purpose and will have some force and effect", said our Supreme Court in State v. Reis,430 A.2d 749 (1981). See also: Collins v. Board of Canvassers andRegistration of City of Providence, 57 R.I. 140 (1937);Providence Journal Co. v. Mason, 116 R.I. 614 (1976), 90 ALR 3d 383. Taking §§ 40.1-5.3-9 and 40.1-5.3-13 together and applying a common sense legal analysis to the construction of each and their relation each to the other, there is little doubt in the mind of this Court that the legislature intended that before an inmate/patient can be transferred from the Forensic Unit to the prison, a hearing must occur. Requiring the Director of MHRH to file a petition with the Superior Court for the purpose of determining whether the inmate/patient is in the discretion of the Court "sufficiently recovered" certainly in itself invokes the necessity of judicial inquiry. To conclude otherwise would be to interpret § 40.1-5.3-9 as merely creating an ex parte proceeding without regard to the "rights" expressly and affirmatively given to the inmate/patient under the terms of §40.1-5.3-13. The relevant language in both those provisions lead this Court to the decision that whether an inmate/patient should be returned to his or her original place of confinement is one of judicial rather than medical determination. Genereux v. Pelosi,192 A.2d 630, 96 R.I. 452 (1963); Quince v. Langlois,149 A.2d 349, 88 R.I. 438 (1959).
In sum, it is the finding of this Court that proper care and treatment of all persons in the custody of MHRH is a fundamental benefit conferred upon an inmate/patient by § 40.1-5.3-1 et seq. in which he or she has a substantial individual interest. It thus falls within the categories of rights required by due process and equal protection principles mandating a hearing before the termination of that benefit. Burchett v. Bower, 355 F. Supp. 1278
(1973); see also Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
For the above reasons, Joseph Shehan's request for hearing is granted. Counsel will submit an order in conformance with this decision.
[1] The petitioner's spin on this language is different from the Court's. "The Court in Jackson would not read into the statute a right to a hearing when no such right was provided for in the statute." Petitioner's Memo., p. 16. Clearly, the Court of Appeals could not read that "right" into the statute because unlike our own, the Massachusetts law is silent on the issue.