**STATE of Missouri, Respondent,**

v.

**Charles WEAVER, Appellant.**

No. 57423.

Supreme Court of Missouri,
Division No. 1.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., Neil Macfarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Douglas N. Merritt, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from denial, after evidentiary hearing, of motion to withdraw plea of guilty to charge of robbery, first degree, and to set aside judgment of conviction and sentence to 20 years' imprisonment based upon such guilty plea. Rules 27.25 and 27.26, V.A. M.R.

By information filed July 31, 1967, Charles Weaver was charged with robbery, first degree, by means of a dangerous and deadly weapon, on July 10, 1967, of Steven Bokonich.

On August 1, 1967, defendant, with his lawyer, Lewis E. Pierce, appeared in circuit court, waived formal arraignment on the charge, and pleaded not guilty. Trial was set for September 11, 1967, and bail was set at $4,000.[1]

On October 30, 1968, defendant, with his lawyer, David W. Russell, appeared on defendant's motion to suppress (identification evidence) and, after it was overruled, he went to trial to a jury. The trial ended October 31, 1968,[2] with the jury's verdict which found defendant guilty and assessed his punishment at 20 years' imprisonment.

On November 12, 1968, defendant filed timely motion for new trial which was sustained December 26, 1968.

On February 24, 1969, defendant, with his lawyer, Kenneth Koman Simon, again appeared on his motion to suppress identification testimony and, after it was overruled, went to trial to a jury.

The State presented testimony from the victim, Steven Michael Bokonich, and Grace Terrell.

On July 10, 1967, Mr. Bokonich was the credit manager at Dan Holiday Furniture, 2112 Truman Road, Kansas City, Jackson County, Missouri. At 3:45 p. m., three men entered the front door and "walked up onto me, and the Number 1 man and the Number 2 man pulled out guns and told me this was a robbery." The third man stayed at the door. Mr. Bokonich identified defendant as Number 2. Number 1 took about $200 from him and, while Number 2 kept his gun pointed at Mr. Bokonich, Number 1 demanded more money and struck him on the head. He and his secretary, Grace Terrell, were then instructed to go to a back room and remove their clothes, except for undergarments, and hand them to the robbers. As the robbers left, Number 3 took a portable television. The robbers were in the store for fifteen to twenty minutes.

Miss Terrell corroborated the testimony of Mr. Bokonich and also identified defendant as one of the robbers.

---

1. It does not appear whether defendant made bond, nor are defendant's whereabouts from September 11, 1967, to October 30, 1968, otherwise shown.

2. Again, the transcript contains no showing of defendant's whereabouts from October 31, 1968, to his second trial February 4, 1969, except with respect to bond and federal parole as will later appear.

At the conclusion of testimony from these two witnesses, the jury was excused until the following morning for these proceedings:

"MR. SIMON: If it please the Court, there has been an indication by the defendant of an announcement in this case. Your name is Charles Weaver? THE DEFENDANT: Right; Charles Weaver. MR. SIMON: Is it your desire to withdraw a plea of not guilty heretofore entered and enter a plea of guilty to the charge? THE DEFENDANT: Yes, it is.

"MR. SIMON: You understand you have a right to continue this trial and have the matter submitted to a jury; you understand that? THE DEFENDANT: Yes. MR. SIMON: You understand at the hands of a jury you might receive more time, less time, or the same time that the Court itself might assess if it accepts your plea; you understand that? THE DEFENDANT: Yes.

"MR. SIMON: Has there been any force, threat or coercion of any kind by anyone for you to withdraw your plea of not guilty and enter a plea to this charge? THE DEFENDANT: No, it haven't. MR. SIMON: You are not under any medical attention, is that right? THE DEFENDANT: I am under a doctor's care. MR. SIMON: I mean not for any mental problems of any kind, you are aware of this being a court proceeding, is that right? THE DEFENDANT: Yes. MR. SIMON: And you have had occasion to consult with me and with your friend, Sandra, concerning this case? THE DEFENDANT: Yes. MR. SIMON: You have had full opportunity to consult, is that right? THE DEFENDANT: And you say plead guilty to presentence. MR. SIMON: Well, now, you understand there is no one that can force you to plead guilty to anything, with or without a presentence, you understand that; that this is a matter of your own free will. * * * Do you understand that, Mr. Weaver? THE DEFENDANT: Yes, I understand. * * *

"MR. SIMON: Now, not only must your plea be voluntary, but it must also be factually correct. Will you tell the Court in your own words, did you in fact participate in this incident at the Dan Holiday Furniture at 2112 Truman Road on July 10, 1967, as charged in this information? THE DEFENDANT: No, I didn't participate in it. MR. SIMON: Of course, if you did not participate, you understand you cannot plead guilty to the charge; you understand that? THE DEFENDANT: ·I was looking out for my own welfare. The way crime is today, that jury will convict me anyhow. * * *

"THE COURT: This Court will not take a plea of guilty if you say you did not do it. * * * Now, if you plead guilty * * *, it will be taken as an admission that what they said occurred did take place. If you say that it did not happen that way, then this Court is not going to take a plea of guilty from you. * * * THE DEFENDANT: Give me time to think. THE COURT: You may wait until 9:30 in the morning. * * *

"MR. SIMON: You must also understand that if the Court accepts your plea and you do confess guilt that only the Judge decides what the punishment is; you understand that? THE DEFENDANT: Yes. * * * MR. SIMON: Now, no one has given you any assurances as to what judgment or sentence would be in this case, is that right? THE DEFENDANT: That's right. MR. SIMON: And you understand that when you plead to the Court then it's up to the Court to dispose of the matter as the Court feels best? THE DEFENDANT: Yes."

On February 25, 1969, these proceedings transpired:

"MR. SIMON: May it please the Court, Mr. Weaver has indicated a desire to withdraw his plea of not guilty and enter a plea of guilty to the charge; is that your desire, Mr. Weaver? THE DEFENDANT: That's my desire, that's right. MR. SIMON: Now, you indicated

yesterday that that also was your desire, is that right? THE DEFENDANT: That's right. MR. SIMON: And since that time you have had opportunity to consult with your friends and family concerning the entry of a plea? THE DEFENDANT: Well, I have spoke about it and talked about it. MR. SIMON: You have also had opportunity to talk with me as your attorney this morning, in addition to our previous conferences about this matter? THE DEFENDANT: That's right.

"MR. SIMON: Now, is it your desire to enter a plea of guilty because, in fact, you are guilty of this offense? THE DEFENDANT: That's right. MR. SIMON: Will you please indicate to the Court in a short statement what actually happened and what participation you had in this incident with which you are charged on July 10, 1967? * * * THE DEFENDANT: Well, me and three other mens went out there and we robbed the Dan Holiday Furniture Company. THE COURT: How did you do it? * * * THE DEFENDANT: Well, we walked in there and robbed the place, but detail, detail, I couldn't exactly say, because it's been so long ago, Your Honor.

"MR. SIMON: Mr. Weaver, there was an indication, you say of three men, and you have heard some testimony from witnesses in the courtroom under oath concerning a Number 1 man, a Number 2 man, and a Number 3 man, is that right? THE DEFENDANT: That's three mans, that's right. MR. SIMON: I understand from the testimony that the Number 3 man was an unarmed man, is that right? THE DEFENDANT: Yes, that's right. MR. SIMON: Which of the men are you now telling the Court that you were in this incident? THE DEFENDANT: Number 2 man.

"THE COURT: Yesterday as we adjourned, you stated that you wanted to plead guilty, and then when the Court and the lawyers questioned you, you said that you actually didn't do it. Now, were you

right then, that you didn't do it, or are you right now, that you did do it? THE DEFENDANT: Well, I'm right now, Your Honor. THE COURT: You did do it? THE DEFENDANT: Yes, sir. * * * THE COURT: In other words, now you sat here through the court yesterday and you heard Mr. Steven Bokonich testify that you went in there and there were three of you went in. Did you have another man as a lookout outside in the car? THE DEFENDANT: Yes. THE COURT: And you had a gun? THE DEFENDANT: Yes, sir. THE COURT: What kind of a gun was it? THE DEFENDANT: I think it was—it was a .38. THE COURT: Revolver? THE DEFENDANT: Yes, sir. * * *

"THE COURT: Do you remember seeing this man and woman who testified here yesterday? THE DEFENDANT: Yes, I remember seeing them. THE COURT: What did you do with them when you went in there? THE DEFENDANT: We went in there and robbed the place and made them pull their clothes off, and made them lay on the floor. THE COURT: How much money did you get, do you know? THE DEFENDANT: It was $200.00. THE COURT: Did anyone hit Mr. Bokonich with a gun? THE DEFENDANT: Yes, Number 1 man hit him with the gun. THE COURT: You didn't hit him? THE DEFENDANT: No, sir. THE COURT: How many times did the Number 1 man hit him? THE DEFENDANT: Twice. * * *

"THE COURT: You have heard the testimony of Mr. Bokonich and the girl Grace Terrell? THE DEFENDANT: Yes, I did. THE COURT: And are you saying to the Court now that you did what they said you did yesterday when they were testifying? THE DEFENDANT: Yes, I am pleading guilty to it. THE COURT: Yes, you are pleading guilty to it, but did you actually do what they said you did? THE DEFENDANT: Yes, I done what they said. * * * THE COURT: You understand that if you plead guilty the

Court can sentence you to any sentence that the law would allow, from five years clear up to life imprisonment? THE DEFENDANT: Yes, sir. THE COURT: You understand that. You think you would rather do that than go ahead with this trial before this jury? THE DEFENDANT: Yes, sir. THE COURT: You have a choice, you know. You can complete your trial and have your day in court; but you would rather plead guilty now to the Court,—THE DEFENDANT: Yes, sir. THE COURT: * * * There have been no threats or promises made to you to get you to change your mind about this, have there? Has anyone promised you anything or threatened you with anything in order to get you to change your mind and plead guilty? THE DEFENDANT: No, sir. * * * THE COURT: There isn't any question, you know what you are doing? THE DEFENDANT: Yes, sir. THE COURT: And you are doing what you want to do, freely and voluntarily? THE DEFENDANT: Yes, sir. THE COURT: You have discussed this with your wife? THE DEFENDANT: Yes, sir. THE COURT: And your attorney? THE DEFENDANT: Yes. * * *

"MR. SIMON: Now you are asking the Court to accept your plea of guilty to the charge and terminate the matter at this time,—THE DEFENDANT: Yes, sir. * * *

"THE COURT: Very well. The Court will accept your plea of guilty. Sentence will be deferred pending a presentence investigation. THE DEFENDANT: I am on federal parole now. * * * THE COURT: You are under bond in this court, also? THE DEFENDANT: Yes, sir. THE COURT: $7,500.00 bond? THE DEFENDANT: $3,500.00 bond. MR. SIMON: It was reduced to $3,500.00 by Judge Riederer after the last mistrial. THE COURT: All right. You will be continued on the present bond until the State Parole Board completes their presentence investigation."

On June 30, 1969, defendant failed to appear for allocution and sentence, and the court forfeited his bond and issued a capias warrant for his arrest.

On December 1, 1970, defendant filed his "Motion to Withdraw Plea—Fast & Speedy Trial and/or Dismissal of Charges." He recited, in addition to matters previously stated: present incarceration in the United States Penitentiary, Terre Haute, Indiana, prior release from custody, subsequent return July 9, 1970, as a parole violator, and sentence expiration dates of December 29, 1971 with good time and June 7, 1972 full term; plea of guilty "following advice of his attorney," guilty plea entered as a result of threat of life imprisonment on demand of the prosecutor and plea bargaining which was to include no recommendation on sentence by the prosecutor and no opposition to probation; plea obtained as a result of coercion, threat and promise, and not voluntary. Also recited were some of the philosophies with respect to the right to a speedy trial and conclusions to the effect movant was entitled to withdraw his plea of guilty and dismissal of the charge.

On December 1, 1970, the foregoing motion was overruled.

In April, 1971, defendant filed his " 'Motion for a Dismissal' Writ of Habeas Corpus," alleging confinement in a hospital at the time of the robbery, and admission by one David Wangwright as the perpetrator of the robbery. This motion appears to have been overruled May 4, 1971.

On October 14, 1971, defendant, with his lawyer, Kenneth Simon, appeared pursuant to writ of habeas corpus ad prosequendum issued to the United States Attorney General to produce Charles Weaver for allocution and sentencing and "upon completion of said proceeding said defendant * * * be returned to the custody of the Attorney General * * *." At this time Mr. Simon recited his receipt of the presentence investigation report and consultation with defendant "in regard to matters pending

here today." Charles Weaver was sworn and this testimony was adduced:

"Q (By Mr. Simon) Now, Mr. Weaver, the subject about which we have been conferring is relative to your discussion with me about a request you have made to me about the possibility of you wanting to withdraw your plea, is that right? A Right. Q You understand that it is up to the Court to decide whether or not a plea may be withdrawn after the plea has been entered; you understand that. In other words, you have entered a plea in this case sometime ago, right? A Yes, but I spoke to the Court and told the Court that I wasn't guilty at the time of this plea, and the court was continued for two days and a half because I kept telling the Judge I wasn't guilty and he would not accept my plea because I wasn't guilty of the charge. I was merely trying to get the charge over, because I had been on this charge since '67, in and out of jail on it.

"Q But substantially what you have asked me to say—or you want some assurances, which I told you no one can give you, that since you are now doing federal time with an expiration date of 1972, you were trying to get your times put together, isn't that right? A Right. Q Now, you understand that I, as your attorney, have told you that this is something that is strictly within the control of the Court; you understand that? A I understand that now. * * * Q Did anyone indicate to you that that, in fact, would be done or that the Court in its own discretion set the penalty to be imposed? Didn't the Judge talk to you about that at the time he took your plea? A I don't remember. I only remember telling the Judge that I wasn't guilty and he continued the case, recessed the court and come back in and I told him I wasn't guilty and I come back in the next day, the 25th, but I don't remember all the details. * * *

"Q In any event, there is no question in your mind today that the Court in this division has full discretion as to the sentence to be imposed? If the Court permits your plea to stand, then the Court has to impose sentence; no one can direct Judge Hall what sentence to be imposed, do you understand that? A Yes, I understand that. * * *

"Q Now, you are presently in the custody of the federal government under what kind of charge? A Forgery. That's my only conviction. Q What sentence did you receive? A I received a six-year sentence. Q A six-year sentence commencing when? A When it ends? Q When did it start? A All right. '66. Q And you have been continuously in custody since that time? A Yes, with this same robbery detainer. * * * Q Do you understand the range of penalty to the offense to which you have plead? A What is the defense on this charge? Q What is the charge? A I know the charge, the charge is robbery, what is the maximum? Q The range of penalty is from five years—is this an armed robbery?

"THE COURT: Armed robbery.

"Q (By Mr. Simon) Five years to death. A Right. Q Wasn't that explained to you in '67 when the plea was taken? A Just like I told you, I don't remember all the details. Q But the record will reflect—A I understand it now. * * *

"Q All right. And that the Court, if it accepts your plea, will only accept it if it is voluntary and if, in fact, you committed the offense, you understand that? A Right. * * * Q You, yourself, started the procedure to get you brought back to the state court for sentencing? A I have been trying to get back here for a year. Q Now that you are back here, what is your position, you don't want to be back here? A I want to get this thing over with, I want to hurry and get this trial over with some kind of way, but just like I say, if I can get the time ran together with my federal time, or something like that.

"Q Let's put it this way, Mr. Weaver. I have no objection to the Court putting your times together, but I don't want you to be under any misapprehension or false idea, that no matter what assurances anybody gave you, and that means anybody, me or a sheriff or another prisoner or whoever you have talked to, there is no one can bind this Court— A I understand that. Q —and force this Court— A I fully understand that. Q Okay. If that is clear in your mind, I think we have accomplished something.

"THE COURT: * * * Mr. Weaver is mistaken about some of the dates. February 24, 1969, the defendant was before this court on a charge of robbery in the first degree. A jury was selected and the trial began. The State presented evidence, and on the following day, February 25, 1969, while the trial was still in progress, the defendant came before the Court and asked to withdraw his plea of not guilty and enter a plea of guilty, whereupon the Court accepted the plea of guilty, discharged the jury, and sentence was deferred pending a presentence report, which the Court requested. Before the report was received the defendant was outside the jurisdiction of this court. Where he was at that time we did not know. Mr. Weaver states he was trying to get this matter settled; so was this Court. We have issued capias warrants for his arrest and return to this jurisdiction. We did have the presentence report, and as Mr. Simon indicated, the presentence report, after reciting various problems that the defendant had, the report would indicate he has had conflicts with the law since 1958, with various types of criminal offenses, so that the State Probation Board did not feel that he would be eligible for supervision under probation, and this Court feels the same way about it. So the defendant, of course, could not be placed under probation, in view of his past record and in view of his earlier problems with the law, which would indicate that he would not be at this time a good probation risk.

"The Court will not permit the defendant to withdraw his plea of guilty. He has had a full, complete trial, he was given a new trial, he heard the evidence of the State that was presented in the second trial, and the Court finds that he knowingly, voluntarily decided to withdraw his plea of not guilty and decided to terminate the trial before the jury, and the Court will not permit him to withdraw his plea of guilty at this time. * * *

"THE DEFENDANT: Can I bring one more thing out? I was in jail in '67, the 14th of June, or July the 14th, '67, I got arrested on this charge, and I was in the county jail here, and I was placed in General Hospital, and I returned back to the jailhouse here, and this charge was dropped for me to go start my federal sentence, then they refiled it on me later and brought me to court a year later. MR. SIMON: It was never dismissed. THE DEFENDANT: How did I get in State custody? I was on federal custody. MR. SIMON: You were out on bond and while you were out on bond the federals filed a charge and— THE DEFENDANT: I lost my federal appeal after waiting in jail three months to be tried on a state charge; that's how I got this federal charge. This is why I had to go to the federal institution. * * *

"MR. SIMON: Mr. Weaver, isn't it true that at the time you were on the State charge, that was before the Eighth Circuit on an appeal of a conviction in the federal court, and while you were in State Custody, the mandate came back denying your appeal? THE DEFENDANT: Right. I lost my appeal. * * * But I was in State custody. MR. SIMON: At that time you were in State custody, but then you must have made a bond. THE DEFENDANT: No, I was in State custody. The marshall came to the county jail and got me out. You told me the case was dropped, this case right here. MR. SIMON: Before your trial in Division 1? THE DEFENDANT: Yes, this was '67, October 16th, when I went to the federal

penitentiary from the 11th floor upstairs. I was in jail from the 14th of October to the 16th. MR. SIMON: Look at the file and see if there is any merit to this. THE COURT: There is nothing in the file that would justify that statement at all. THE DEFENDANT: I never made bond in this charge, Your Honor, before I was tried. I was in State custody here from July 14, 1967. * * *

"THE DEFENDANT: That was when they filed it on me down in El Reno, Oklahoma, October the 7th, 1967. That's when the 'Feds' come up to the State jailhouse and got me out of there and took me to the federal institution. The State dropped this charge. You told me this. MR. SIMON: I didn't handle your case in '67. * * * THE DEFENDANT: I am speaking of '67 when I was arrested on this State charge, I was put in the county jail July 14, 1967, and they released me in October to go to the federal institution.

"MR. MITCHELL [Assistant Prosecuting Attorney]: The jail may have released you, but there was a bond forfeiture. THE DEFENDANT: You can't find that I made no bond before I went to the penitentiary. I never was released, I went to the penitentiary, the federal institution. * * *

"THE COURT: This case was never dropped.

"THE DEFENDANT: You see, when I went to the penitentiary right here, 10th month, 7th day, '67, that's when a capias was issued, brought down to El Reno, Oklahoma, and put a detainer. I had this case in '67. I left out of State custody and went to the federal penitentiary. The State had disposed of my State charges.

"THE COURT: No, the State has never dismissed these charges.

"THE DEFENDANT: How could the State turn me over to the federal? MR. SIMON: They didn't refile any charge, they just issued capiases for the existing charges. In other words, the charge was

always maintained; the only thing, the sheriff's office released your custody— THE DEFENDANT: Released jurisdiction on me to turn me over to the federal. MR. SIMON: No more than the federal loses jurisdiction by bringing you here. THE DEFENDANT: They bring you here under a writ and return you under a writ so there is no jurisdiction lost by either side. That's the way they do it; they have to do it this way.

"THE COURT: The charge has been pending against you since the 14th day of July, 1967, and it has continuously been pending against you, with the things that I have indicated to you. THE DEFENDANT: They had me in custody and tried me and returned me to the federal.

"THE COURT: The Court will sentence you to the Missouri Department of Corrections for a period of twenty years.

"THE DEFENDANT: Your Honor, there is no time I can withdraw my plea?

"THE COURT: The plea will stand. * * * The Court will give him credit for time spent in the federal institution, beginning as of this date. MR. SIMON: As of date of sentencing. THE COURT: As of today."

At the conclusion of these proceedings on October 14, 1971, the court sentenced defendant to 20 years' imprisonment with credit given for time served in the federal penitentiary "from this date under the present federal sentence, and said defendant is returned to the custody of the United States Marshal."

Appellant charges that the court erred in refusing to allow him to withdraw his guilty plea prior to imposition of sentence on the ground his plea was involuntary. He prefaces his argument with citations that a plea of guilty may be withdrawn before sentencing "in a proper case," Hughes v. United States, 8 Cir., 371 F.2d 694; Pitt v. United States, 8 Cir., 378 F.2d 608; Williams v. State, Mo., 437 S.W.2d 82. He also recognizes that the movant bears

the burden of proof to show the "manifest injustice" necessary to invocation of the court's discretion to set aside a judgment of conviction and permit withdrawal of the guilty plea upon which it is based. Rule 27.25, supra; State v. Edmonson, Mo., 438 S.W.2d 237.

Appellant's argument asserts a belief that he was pleading guilty to a crime for which punishment ranged from five years to life imprisonment as suggested by the judge, when he understood at sentencing that the penalty ranged to death. This, he contends, shows conclusively that his plea was not knowingly entered; and, accordingly, he should be permitted to withdraw it "where he had been misled or induced by mistake or otherwise." See State v. Rose, Mo., 440 S.W.2d 441; State v. Cochran, 332 Mo. 742, 60 S.W.2d 1; State v. Hovis, 353 Mo. 602, 183 S.W.2d 147; State v. Smith, Mo., 421 S.W.2d 501. He suggests also, by citation of United States v. Cody, 8 Cir., 438 F.2d 287, and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L. Ed.2d 418, a contention that the present record is deficient in lacking demonstration that the judge was satisfied that the guilty plea had a basis in fact.

The proceedings and evidence have been stated in some detail because they demonstrate that the court's refusal to permit defendant to withdraw his plea of guilty is not "clearly erroneous," Rule 27.-26, supra, for any of the suggested reasons.

The record shows detailed questioning at three different stages with respect to movant's understanding of the range of punishment, the last of which made clear his understanding that it ranged upward to death. The record also shows detailed questioning at all three stages covering the voluntariness of his guilty plea and an understanding of its consequences. There is no showing that his plea was any less voluntary on account of the two statements relative range of punishment, and the punishment assessed is well below the limit in either instance. He does not say he would

not have pleaded guilty if he had known of the total range of punishment. In such circumstances, conflicts on the record were for the court to resolve, and appellant has not met his burden of proving abuse of discretion in the resolution. State v. Edmonson, supra; Meyer v. United States, 8 Cir., 424 F.2d 1181; Peterson v. State, Mo., 444 S.W.2d 673; Young v. State, Mo., 438 S.W.2d 280.

On the second argument suffice to say that defendant's own statement of how he committed the robbery furnishes the necessary basis in fact for receipt of his guilty plea.

Appellant also contends the court erred in crediting his jail time under Section 546.615, V.A.M.S., because it was credited only "prospective from the imposition of sentence."

Section 546.615, as originally enacted, Laws of Missouri 1959, required the court to give credit for time spent in prison or jail subsequent to his sentence, and permitted the court in its discretion to give credit for time spent in prison or jail prior to conviction and date of pronouncement of sentence. Section 546.615 was amended, Laws of Missouri 1971, effective September 27, 1971, to require credit of all time spent in prison or jail both awaiting trial and pending transfer to the department of corrections. Appellant contends he should have the benefit of the statute as amended because his sentence was imposed subsequent to its effective date.

It is not necessary to determine whether appellant is entitled to further credit by virtue of the statute as amended, because, as recited by appellant, "the record is not clear precisely whether [during the pendency of these proceedings] he was a State prisoner, Federal prisoner or on bond to either." With the record in this state, movant has again failed in his burden of proof; and it may not be said that the court's failure to give credit for time other than that to be served in the

federal institution prior to delivery to the Missouri Department of Corrections for service of the 20 years' imprisonment is clearly erroneous.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

HOLMAN, P. J., SEILER, J., and FINCH, C. J., concur.

BARDGETT, J., not sitting.