**STATE of Missouri, Respondent,**

v.

**Henry BROWN, Appellant.**

**No. 56780.**

Supreme Court of Missouri,
Division No. 2.

Nov. 12, 1973.

Motion for Rehearing or Transfer to Court
en Banc Denied, Dec. 10, 1973.

John C. Danforth, Atty. Gen., Karen I. Harper, Asst. Atty. Gen., Jefferson City, for respondent.

Joseph Langworthy, Pacific, for appellant Henry Brown.

STOCKARD, Commissioner.

Henry Brown, charged as a second offender, was found guilty by a jury of murder in the second degree and sentenced by the court to imprisonment for a term of twenty years. By notice of appeal filed prior to January 1, 1972, he has appealed from the ensuing judgment.

The trial court instructed the jury on the issue of excusable homicide by reason of an accident. Appellant contends that prejudicial error resulted from the failure of the trial court also to give the jury an instruction submitting the issue of self-defense. This necessitates a detailed statement of the testimony.

Appellant, his wife, and Carl Barnell were sitting on a bench in a small park at the intersection of Washington Street and Grand Avenue in the City of St. Louis. According to the testimony of appellant, he had a radio on the ground near his feet. Barnell reached for the radio and said he was going to sell it. He also said, "I am going to kill both of you." Appellant got up, and Barnell then kicked him in the groin and took a pistol from his (Barnell's) waistband or pocket. When Barnell "reached for his gun" appellant "grabbed him" and he and Barnell "began to scuffle" or "tussle," and while they were scuffling "the gun went off just one time." Appellant testified that when the gun fired, "he had the gun and I also had the gun." Barnell then stood there, lowered the gun, and it fell out of his hand. Barnell "pulled his hand up in a judo chop,"

which missed appellant, and he then turned and fell to the ground.

The State presented the testimony of three witnesses concerning the circumstances of the shooting.

Vernon B. Stansel, an inspector for a transit company, testified that he heard a sound like a "backfire" and saw "two men standing face to face, and one man throwing up his hands and * * * swiveling and falling backwards." He then saw the other man, identified as the appellant, "pick up something that was handed to him by someone sitting on a bench," look at Barnell "with a smirk on his face," and walk away. Stansel did not see any weapon in the possession of either Barnell or appellant.

Mrs. Mary Harris was employed in a nearby shop. She testified that she saw two men facing each other, and that one, Barnell, attempted to kick appellant but he did not "even come close." Appellant then "reached in his pocket" and "brought this hand up and held out a gun and he shot him." Barnell threw up his hands, stood there, and fell. Appellant laughed, shrugged his shoulders, and walked away. She saw no weapon in Barnell's hand.

Dr. Henry A. Waldschmidt, an optometrist, had just closed and locked the door to his office when he saw appellant sitting on a park bench drinking from a bottle. He then saw Barnell standing in front of appellant shaking his finger at him, and appellant slid over on the bench and "took a swing" at Barnell who attempted to kick appellant but missed. Barnell stepped back, and appellant pulled something out of his pocket which he held in front of him and about two feet from Barnell. Dr. Waldschmidt then heard a "pop," and Barnell fell to the ground. After appellant picked up something from the bench he walked away. Barnell had no weapon.

We shall next examine the testimony of Malinda Brown, appellant's wife. She was a witness for the defense and was the only other person to testify concerning the circumstances of the shooting. She stated that the three of them were drinking wine when Barnell said, "this is my radio and I want it." He then "snatched" at the radio, appellant got up from the bench, and Barnell kicked him in the groin. According to Malinda, "the dude [Barnell] then came up with a gun * * * and they got to wrestling over it * * * [and] it went off." She did not know who was holding the gun when it went off, but appellant never had possession of it. After the shot was fired, Barnell stood there with the gun in his hand. He then dropped the gun, advanced toward appellant, attempted to deliver a "judo chop," and fell to the ground.

 The defenses of self-defense and accident are inconsistent, and "the defendant alone may not provide the basis for submitting such inconsistent defenses to the jury." State v. Randolph, 496 S.W.2d 257 (Mo.Banc 1973). If the shot was fired in self-defense, it required the voluntary act of appellant; if the shot was accidental, the act was involuntary. State v. Peal, 463 S.W.2d 840 (Mo.1971). However, under certain circumstances the defendant is entitled to both submissions. "For example, if a defendant by his own testimony provides the basis for an accident instruction, it must be given; but if to the contrary, testimony of others shows defendant acted in self-defense, he also is entitled to a self-defense instruction." State v. Peal, supra.

When the instructions were being considered the court announced its intention to instruct on accident, and specifically asked appellant if he wanted to request any other instruction. Appellant agreed that the proposed instruction on accident was correct, and did not mention the issue of self-defense. It was not until after the court started to read the instructions to the jury that appellant, for the first time, raised the question of an instruction on the issue of self-defense, but he did not then request that it be given in lieu of the instruction

on accident. Appellant was not, by reason of his testimony, entitled to an instruction on accident and also on self-defense. If in addition to the accident instruction, which his testimony clearly authorized, he was entitled to an instruction on self-defense, it was only by reason of the testimony of one or more of the three witnesses for the State or of appellant's wife.

" 'The right to kill in self-defense is founded in necessity, real or apparent' * * * and before such extreme measure may be lawfully resorted to the record must show that the appellant acted 'under at least an apparent necessity, in order to save himself from death or great bodily harm.' " State v. Parker, 403 S.W.2d 623 (Mo.1966). The testimony of the three witnesses for the State, and the testimony of appellant's wife, does not in any way indicate that the firing of the gun was a voluntary act of appellant taken while acting under an apparent necessity to save himself from death or great bodily harm. At most, in taking the defensive action that he took, he "had no more to apprehend than * * * [a] simple assault and battery * * * and that alone would not justify a killing in self-defense." State v. Parker, supra at p. 627. There was no evidence which required the court to give an instruction on self-defense, and the court did not err in failing to do so. See State v. Hale, 371 S.W.2d 249 (Mo.1963); State v. Malone, 301 S.W.2d 750 (Mo.1957); and State v. Parker, supra.

For his second point appellant asserts that the court erred "in permitting the jury to separate," and in refusing "at each adjournment * * * to give the admonishment to the jury" required by § 546.230, RSMo 1969, V.A.M.S. In the argument portion of appellant's brief no mention is made of an improper separation of the jury, unless it is the contention that any separation is improper when an admonishment is not given which meets the minimum requirements of § 546.230.

The admonishment by the court to the jury at the time of the first separation did not follow the precise language of the statute, but it was not necessary that it do so. State v. Harris, 477 S.W.2d 42 (Mo.1972). To any reasonable juror the admonishment given by the court adequately covered all matters required by the statute. At each subsequent adjournment the court instructed the jury to keep in mind the previous admonitions. Appellant's counsel interposed only a general objection on the ground that the admonishment was not complete, but he did not state in what respects he considered there was a deficiency, except on one occasion he apparently advised the court in some conference not shown in the record that he wanted the jury admonished not to form an opinion until they had heard all of the evidence. The court expressed its opinion that this had previously been covered, and it was correct in that respect, but it immediately so admonished the jury. Appellant makes no effort to demonstrate any improper conduct of the jury resulting from what he contends was a failure to comply with the statute. We are of the opinion that the admonishment to the jury was adequate under the circumstances, but assuming some deficiency, the error was harmless beyond a reasonable doubt. Morrow v. United States, 408 F.2d 1390 (8th Cir. 1969).

In his fourth and fifth points appellant asserts that in a hearing held on July 8, 1969 the trial court erred (1) in determining in a summary proceeding his competency to stand trial without permitting him full interrogation of Dr. Edward R. Telles; (2) in denying him the right to call any further witnesses or be heard in argument; (3) in depriving appellant of his "liberty without due process of law, particularly his 'right to be heard;' " and (4) in hearing further evidence when his counsel was not present.

Although not essential, it will be helpful to review the procedural history of this

case. The indictment was filed on April 27, 1965, and at arraignment on June 18, appellant entered a plea of not guilty. On August 27, 1965, appellant filed a motion in which he requested that he be admitted to Missouri State Hospital No. 1 for examination, and he alleged therein that he had "a mental disease or defect," and that he lacked "the mental capacity to understand the proceedings against him or to assist in his own defense." The motion was sustained and the examination was ordered. On September 8, 1966, the State filed a motion requesting that appellant be declared "incompetent to proceed," and alleged therein that after examination of appellant at Hospital No. 1, a report had been filed wherein it was stated that appellant was suffering from a mental disease or defect, and that he did not have the capacity to understand the proceeding against him or assist in his own defense. Although the report was in accord with appellant's allegations in his request for a mental examination, appellant's counsel contested the above report of the hospital, the precise reason not being shown, and a hearing was ordered. Apparently the State's motion was overruled, and on October 14, 1966 the State filed a motion to have appellant examined "in order that the State might offer evidence upon the issue of the [appellant's] present ability to stand trial." This motion was sustained, and appellant was ordered sent to Malcolm Bliss Hospital. On March 14, 1967, the State filed a motion to have appellant declared unable to cooperate in his defense, and in support thereof it alleged that the report from Malcolm Bliss Hospital so indicated. A hearing was held on June 4, 1968 "with reference to [appellant] being unable to cooperate with counsel and in his defense," and appellant was remanded to the custody of the Director of Mental Diseases. On July 31, 1968, appellant filed a "Motion for Discharge" on the basis that he had unconstitutionally been denied a speedy trial, and because he had "not been brought to trial until well more than the third term of court having jurisdiction." This motion

was overruled. On January 22, 1969, appellant filed a "Motion to Proceed," and alleged therein that "he fully understands the nature of the charge against him * * * and that he is competent to assist counsel in his defense," and further that "said unfitness no longer endures and that [he] does have the capacity to understand the proceedings against him and assist in his own defense." No ruling on this motion is shown, and a second motion seeking the same relief was filed on June 27, 1969. A hearing on that motion was ordered to be held on July 8, 1969. It is this hearing to which the assignments of error in the fourth and fifth points are directed.

Dr. Edward R. Telles, a physician at State Hospital No. 1, testified that appellant had received extensive medication and treatment, that he "understands right and wrong at the present time and he can assist in counseling himself," and further that "if he is required to have a trial or hearing on his behalf, he will qualify for it." After further interrogation and discussion between the court and counsel, the court ruled that the case be placed on the docket for trial in September, and that appellant be returned to Hospital No. 1 pending trial. Appellant's counsel objected to the order, the basis therefor not being shown, and stated that he would "like to be heard further." There followed a somewhat heated discussion between appellant's counsel and the court, which ended when on orders of the court counsel was escorted from the courtroom by the sheriff. The transcript does not support appellant's assertion that further evidence was heard.

A continuance was granted from the September setting because of an injury sustained by appellant. The trial started on March 10, 1970, but ended in a mistrial because of gross misconduct of appellant in the courtroom, and because of his refusal to leave his cell and return to the courtroom after a recess.

■ Appellant's contentions concerning the hearing held on July 8, 1969 are pat-

ently frivolous. That hearing was held on appellant's "Motion to Proceed" in which he asserted that he had recovered from his mental condition and was able to understand the nature of the proceedings against him and assist in his defense. The ruling of the trial court was in accord with appellant's contention in his motion, and after that ruling was made there was no occasion for appellant's counsel to attempt to present additional evidence or to present argument in support of his request which had already been granted. Under the circumstances the trial court exercised commendable patience. In addition, all of this occurred preliminary to a trial which resulted in a mistrial, so whatever there occurred had no bearing on the subsequent trial which resulted in the verdict of guilty and the judgment from which this appeal was taken.

Appellant's third point is that the court erred in overruling his motion for discharge. He asserts abstractly that he was entitled to be discharged (1) because of the provisions of § 545.890, § 545.910 and § 545.920, RSMo 1969, (2) because he was denied his constitutional right to a speedy trial, and (3) because "as contrasted with other persons not charged with a crime, or those charged but who have not been found to have a mental disease or defect who have not been convicted, in denial of his rights to equal protection of the laws as guaranteed to him by Section 1 of Amendment 14, Constitution of the United States of America, and the equal rights and opportunity under the law guaranteed to him by Section 2 of Article I Constitution of Missouri." We are forced to admit that we cannot determine the thrust of his third subpoint at least with any meaningful relation to the demand for a speedy trial or to a contention that he was denied equal protection of the law. This contention is not mentioned in appellant's argument, and we need not refer to it further.

In reference to the first and second subpoints to appellant's third point, it must be conceded that there was a substantial delay between the return of the indictment and trial which resulted in appellant's conviction, and during that period there passed more than three terms of the Circuit Court of the City of St. Louis. Appellant's argument in his brief pertaining to this point is a rambling discussion almost unrelated to the issues. It contains references outside the record, and in some respects is factually incorrect. It is there stated, for example, that the "State of Missouri, not the defendant, attempted to have [appellant] to be declared incompetent to proceed." The transcript shows that on August 27, 1965 "Defendant, Henry Brown, by his attorney [Mr. Langworthy], moves that the court shall appoint physicians to examine him and that he be submitted to the Missouri State Hospital No. 1 forthwith for such examination, upon the grounds that there is reasonable cause to believe that the defendant has a mental disease or defect such that he lacks the capacity to understand the proceedings against him or to assist in his own defense." This was the first proceeding on the issue of appellant's competency to stand trial, and all subsequent action was triggered by this request.

Other than an unrelated reference in the point, appellant does not develop his contentions as to why he was entitled to discharge pursuant to the cited statutes. While he makes some assertions, not supported by the record, concerning the reason continuances were granted, there is no proof whatever that the continuances were not on his application or were not occasioned by the want of time to try the case. In addition, the statutory sections cited by appellant necessarily must be construed to refer to periods of time in which a person under indictment is capable of being tried. See Genereux v. Pelosi, 96 R.I. 452, 192 A.2d 630 (1963), where it is stated, "If the accused himself has put in issue his mental competency to stand trial it has been held

that he cannot thereafter claim that either his constitutional or statutory right to a speedy trial has been violated." See also, Germany v. Hudspeth, 209 F.2d 15 (10th Cir. 1954); State v. Stanley, 179 Kan. 613, 296 P.2d 1088 (1956); State v. Theard, 203 La. 1026, 14 So.2d 824 (1943); Connelly v. Balkcom, 213 Ga. 491, 99 S.E.2d 817 (1957). After it was determined that appellant did not have the requisite mental capacity to stand trial, the State could not then try him until that condition no longer existed. As stated in Brown v. State, 485 S.W.2d 424 (Mo.1972), " 'the conviction of an accused person while he is legally incompetent violates due process.' " Appellant has not met his burden of establishing that he was entitled to be discharged by reason of the provisions of any statute.

Appellant argues generally concerning his constitutional right to a speedy trial, and cites and relies primarily on Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). However, that case does not pertain to the requirements for a speedy trial when a delay resulted from a lack of mental capacity of an accused to stand trial.

In Howard v. United States, 261 F.2d 729 (5th Cir. 1958), relying on Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), it was held that the failure to put an accused to trial because of his mental incompetency does not deprive him of the right to a speedy trial under the guarantee of the Sixth Amendment to the Constitution of the United States. See also Johnson v. United States, 333 F.2d 371 (10th Cir. 1964). When the period of mental incompetency to stand trial is not considered, appellant has made no showing of a denial of any constitutional right to a speedy trial.

By his sixth point appellant contends that the court erred when it refused to permit him to make bail.

We first note that apparently the amount of bail had previously been set because the record shows that on December 14, 1964, the court overruled appellant's motion to reduce "the amount of his bond * * * to not more than $5,000." The amount previously set is not shown, and appellant made no showing that he could have made bail in any amount.

The request by appellant to be admitted to bail was made at the close of the hearing on July 8, 1969. He had previously been committed to State Hospital No. 1 because it had been determined that he was not competent to proceed. The July 8 hearing was held to determine if he was then competent, and the court determined that he was and directed that he be retained in State Hospital No. 1 pending trial. The pertinent part of § 552.020(7), RSMo 1969, provides: "If the court determines that the accused has mental fitness to proceed and does not admit the accused to bail, or release him on other conditions, the court may order that the accused be committed to or held in a suitable hospital facility pending further proceedings." Appellant does not challenge the validity or application of the above statute pursuant to which the action of the trial court was taken. However, assuming some merit to appellant's contention that the court erred in refusing to admit him to bail, and we think there is none under the circumstances, the failure to grant bail had no bearing whatever on the validity of the judgment from which he has appealed. He does not claim that by reason of the denial of bail he was in any way hampered in his preparation for trial. In fact, he makes no attempt to demonstrate prejudice in the trial, and cites no case in support of his contention.

The seventh and eighth points are that the court erred (1) in setting the case for trial on June 29, 1970 and sending it to division for immediate trial without notice to counsel; (2) in keeping appellant in the State Hospital until June 25, 1970 and in bringing him to the city jail without notice to counsel that he was in St. Louis until after the case was sent to a division for trial so that appellant "had no reason-

able opportunity to consult with counsel before trial;" and (3) in refusing, during the course of the trial, to permit appellant to confer with counsel without the presence of a deputy sheriff. All of these contentions are directed to the assertion that appellant was deprived of the right to counsel.

In our opinion the record does not support counsel's assertion that he was totally without notice of the proposed trial. Neither does it support his contention that he acted with diligence in keeping abreast with the developments in the case when he knew it was subject to being assigned to a division for trial. The court commented as follows: "As to the point of lack of notice, counsel did see the latest [medical] report, the dockets of this court are published in the Daily Record, this case has been pending for some time and during most of it counsel has been insisting on the trial." The position of appellant's counsel is that although the case was pending in the Circuit Court of the City of St. Louis, his law office was in Pacific, Missouri, thirty-three miles away, and therefore he "was under no duty to make inquiry as to a setting." Aside from all this, appellant made no request for a continuance or for a delay, and he now makes no effort to demonstrate how or in what manner he was handicapped or hindered by proceeding to trial at the scheduled time. There was nothing to indicate that the trial was expedited "in the face of any *justifiable* request for a delay as would render the right to defend with counsel an empty formality." State v. Thomas, 433 S.W.2d 537, 539 (Mo.1968). At most, appellant's counsel asserts a technical failure to give him personal notice of what he knew, or in the exercise of proper diligence would have known. Such error that occurred, if any, was harmless beyond a reasonable doubt.

Appellant's objection to the presence of a deputy sheriff arose in these circumstances. At the conclusion of the State's case a recess was had, and in chambers the court stated: "Let the record show that after the recess Mr. Langworthy [appellant's counsel] indicated he wanted to talk to his client, but did not want to talk to him in the cell where there were other prisoners; that the court then instructed the bailiff to take the defendant to the witness room down the hall and give Mr. Langworthy an opportunity to talk to him." Appellant's counsel then objected, and although he argued generally about constitutional principles, his contention was that he did not want a deputy sheriff in the room. The court commented: "As the court previously indicated to Mr. Langworthy, the court made arrangements as feasible [as possible] under the circumstances. This man is charged with murder in the second degree, he has had some mental disease, the room to which the court permitted him to be brought is simply a witness room, there are windows in the room, and no real security. The record should also indicate that the defendant is a large man, better than six feet tall, and weighing about two hundred and fifty pounds. Under the circumstances and since he is in custody, the court made such arrangements as could be made under the circumstances, and it should be pointed out that counsel has had several years to consult with this man."

The accused in a criminal proceeding has the right to communicate with counsel free from interference or eavesdropping. State v. Hatfield, 465 S.W.2d 468 (Mo.1971). However, a person in confinement or under custody is not entitled to be released therefrom to confer with counsel. In this case appellant was under custody, he had in a previous trial grossly misbehaved in the courtroom, and the only then available room did not of itself provide adequate security. There is no showing of the size of the witness room, or that appellant and his counsel could not privately confer therein even though a deputy sheriff, for security reasons, was somewhere in the room, as distinguished from being nearby or eavesdropping. A defendant's right to communicate with counsel is not infringed merely

because necessary security restrictions are taken which do not interfere with the privacy of the communication. Krull v. United States, 240 F.2d 122 (5th Cir. 1957), certiorari denied 353 U.S. 915, 77 S.Ct. 764, 1 L.Ed.2d 668; Hicks v. Fay, 230 F.Supp. 942 (D.C.N.Y.1964); Sanderson v. State, 105 Tex.Cr.R. 198, 287 S.W. 251 (1926). See La Fontaine v. State, 223 Miss. 562, 78 So.2d 600 (1955), where the factual situation is similar to that in this case. Appellant's counsel, as an officer of the court, had some duty to cooperate in a situation where reasonable security precautions had to be taken into consideration when providing facilities or arrangements for counsel and an accused to confer privately. There is no indication that counsel evidenced even a semblance of cooperation to work out a satisfactory solution. The presence of a security guard in the room did not necessarily prevent private consultation between appellant and his counsel, and appellant has not demonstrated that it did so in this case. The contention is without merit.

In his ninth point appellant asserts that the court erred in "unduly restricting counsel's examination of the jury panel by refusing to let counsel inquire as to the understanding of the veniremen of the distinctions between the burden of proof in criminal and in civil cases." Appellant cites no authority for his contention, and in his argument he admits that "there is no support in the record for this point." Counsel asserts that after "numerous requests" the reporter has not furnished a transcript of the voir dire examination. But, the transcript before this court, which does not contain the voir dire examination, was expressly approved by appellant's counsel. There is no showing, and appellant does not contend, that his counsel has taken any appropriate procedural step to supplement the transcript. There is nothing before this court pertaining to this contention for appellate review.

Appellant's tenth point is patently frivolous. He asserts that the court erred in refusing to declare a mistrial and in refusing to strike the testimony of Dr. Durand Benjamin because his name "was indorsed upon the indictment in violation of Supreme Court Rule 24.17," and because his name was not endorsed on the indictment when it was filed, but that it was subsequently endorsed without notice to appellant's counsel.

Dr. Benjamin was a physician employed by the coroner. He testified that he performed a post-mortem examination on the body of Carl Barnell. After relating in detail the findings of his examination, and identifying on State's Exhibit No. 1, a photograph, the bullet hole in the body of Barnell, appellant's counsel then objected because the name of this witness had been endorsed "by a memo filed on September 17, 1969, and that a copy of the foregoing was mailed to me at that time." He then argues that Rule 24.17, V.A.M.R. "contemplates notice before [the endorsement of additional witneses] and not afterwards." Contrary to appellant's assertion in his point, there was no request for a mistrial, and it is questionable whether an understandable request was made to the court that the testimony of Dr. Benjamin be stricken. Appellant's counsel admits that on September 19, 1969, he had notice of the endorsement of Dr. Benjamin, which was more than nine months before trial. The objection made at trial was not timely, and even if it had been, it was totally without merit. See State v. Durham, 418 S.W.2d 23, 27 (Mo.1967).

By his eleventh point appellant asserts error in Instruction No. 1, submitting second degree murder of which he was found guilty, and in Instruction No. 2, submitting manslaughter, of which appellant was not found guilty, because "neither * * * is qualified by any reference to instruction number 3, purporting to be a specific instruction on the burden of proof as to accident." In his brief appellant's counsel makes the following statement: "I assume that my thinking on this matter at the time I complained of the error was by

analogy to the requirement in civil cases that the plaintiff's verdict instruction refer to defendant's affirmative defense instructions. * * * As a strict matter of reason, I think probably that my conception is erroneous." Appellant's counsel is correct in this respect, and the point merits no further discussion.

In his twelfth point appellant challenges Instruction No. 3, which submitted the defense of accident, because "its emphasis is on the burden of proof and it does not clearly direct a finding of not guilty if the jury finds that the killing was accidental." Appellant cites no authority in support of his contention, and at the time the instructions were being considered prior to reading them to the jury, appellant's counsel advised the court, "I think Instruction 3 is correct." Appellant now argues that "the better practice" would have been to have worded the instruction differently, but he does not attempt to demonstrate error in the instruction that was given. The point is without merit.

Appellant's final point challenges § 552.-040, RSMo 1969, V.A.M.S. as being unconstitutional. This statute provides that when an accused is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person committed to the Director of Mental Diseases for custody, care and treatment. Other provisions provide for release upon certain determinations.

Appellant's counsel states in his brief that "Henry Brown has consistently refused to plead mental disease as a defense." Prior to trial appellant's counsel advised the court that appellant "waived the mental disease defense," and the court then interrogated appellant as follows:

> The Court: The reports indicate that you had a mental disease at the time of the alleged commission of this alleged offense, and, of course, that gives you the right to raise the defense of insanity. Now Mr. Langworthy tells me he has discussed this with you, and at great length, and that it is not your wish to raise this defense.
>
> The defendant: No, sir, it's not my wish to raise that, to plead insane.
>
> The Court: I just want to be clear on that. He tells me that, but I want to hear it from you. It's your desire this be tried without that defense being raised?
>
> The defendant: Yes, sir; yes, sir.
>
> The Court: And purely on the issue of guilt or innocence—right?
>
> The defendant: Yes, sir.

Appellant did not plead not guilty by reason of insanity at the time of the commission of the offense with which he was charged, and he has not been committed to the custody of the Director of Mental Diseases pursuant to the provisions of § 552.-040, RSMo 1969, V.A.M.S. His contention, as we are able to understand it, is that if he had pleaded such defense, and "if he [had been] successful in such defense he risk[ed] being confined to a state mental hospital for the rest of his life." He argues, in effect, that by forcing him to run this risk if he elected to plead not guilty by reason of insanity, he has been deprived of some constitutional right.

Appellant cites no authority for his position. Aside from the fact that we consider appellant's contention to be without merit, we also are of the opinion that he lacks standing to challenge, on constitutional grounds, the provisions of § 552.040.

"The applicable general rule is that the constitutionality of a statute is considered in the light of the party seeking to raise the question and of the particular application of the statute to him, and a constitutional attack may not be made by one whose rights are not, or are not about to be, adversely affected by operation of the statute, and one may not urge unconstitu-

tionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be unconstitutional." State v. Mucie, 448 S.W.2d 879 (Mo.1970). Appellant not only did not seek to avail himself of the provisions of § 552.040, he disavowed personally and by counsel his desire to do so. Therefore, he has not been harmfully affected by the provisions of that statute, and the contention he seeks to present is not an issue on this appeal.

In his reply brief appellant attempts to present an additional point. Apparently realizing that such assignment of error does not present an issue for appellate review, State v. Virgilito, 377 S.W.2d 361 (Mo.1964), appellant purports to invoke the application of Rule 27.20(c), V.A. M.R. pertaining to plain error. The contention is that the court "abused its discretion in refusing to credit appellant with his jail time and also with his hospital time under the provisions of § 546.615."

The provisions of § 546.615, then applicable, required the court to give credit for time spent in prison or jail subsequent to his sentence, but it permitted the court in its discretion to give credit for time spent in prison or jail prior to conviction and date of pronouncement of sentence. See State v. Weaver, 486 S.W.2d 482 (Mo. 1972); State v. Heard, 460 S.W.2d 570 (Mo.1970). At the time of the entry of judgment and pronouncement of sentence, the court expressly declined to credit the sentence with the time appellant had previously spent in confinement, and there is no showing of an abuse of discretion.

We are aware of the ruling in State v. Whiteaker, 499 S.W.2d 412 (Mo., handed down by Division I on September 10, 1973), but appellant's point is limited to the issue of an abuse of discretion on the part of the trial court, which did not occur. Whether appellant is entitled to relief by reason of the Whiteaker case should be decided only after the issue has been presented pursuant to appropriate petition for re-lief and after the court has had the benefit of briefs by the parties.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.